UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LESTER COLE et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:05CV01374 ERW |
| | ) |
| DAIMLERCHRYSLER CORP. et al, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant DaimlerChrysler Corporation's ("DCC") Motion for Summary Judgement [doc. #17] and Defendants International Union, United Automobile Aerospace & Agricultural Implement Workers of America – UAW ("International"); Local 110 International Union, United Automobile Aerospace & Agricultural Implement Workers of America – UAW ("Local 110"); and Local 136 International Union, United Automobile Aerospace & Agricultural Implement Workers of America – UAW ("Local 136") (collectively, "Union") Motion for Summary Judgment [doc. #21].

**I.    BACKGROUND FACTS**[1]

In this case, numerous DCC retirees bring suit against both their Union and DCC concerning events related to their eligibility for a certain retirement incentive. Periodically, DCC and the International enter into a collective bargaining agreement ("CBA") governing the terms and conditions of employment for all of DCC's hourly production and maintenance employees nationwide. Plaintiffs are former employees of the St. Louis-North and St. Louis-South DCC plants and are covered by the

---

[1]The Background Facts are taken largely from DCC's Statement of Uncontroverted Facts and also from the Union's Statement of Uncontroverted Facts. The facts set forth here are those to which no genuine dispute exists.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

CBA. Of importance in the instant case is that DCC and the Union also are parties to a collectively bargained Pension Agreement.[2] The Pension Agreement sets forth various terms concerning a previously established Pension Plan. On March 12, 2001, after a period of negotiations dating back to the end of the year 2000, DCC and the Union, as well as local unions in approximately seventy other locations around the country, entered into a "letter agreement" ("2001 IPR Letter Agreement") which, by its terms, amended the Pension Agreement and set forth the terms of a supplemental pension benefit plan called the "Incentive Program for Retirements" ("IPR"). The IPR is a retirement incentive plan intended to induce employees to elect to retire voluntarily in an effort to reduce DCC's workforce in select locations. Pursuant to the terms of the 2001 IPR Letter Agreement, certain hourly employees who retire under the terms of the IPR receive a payment in addition to the regular or early retirement benefits for which they were otherwise eligible.[3] DCC and the Union agree from time to time as to the various manufacturing, assembly, and other plants where the IPR will be offered, the dates the IPR will be offered and retirements effective, and whether the offers will be conditional or not.

Between March 2001 and the end of 2005, DCC has agreed to a total of 145 IPR offerings. The IPR was first offered at five DCC plants between March and May 2001. Later, by an agreement memorialized in September 2001, DCC agreed to make 33 additional IPR offerings throughout the remainder of 2001, including offerings at the St. Louis-North Assembly and St. Louis-South Assembly

---

[2]The CBA and Pension Agreement are negotiated on a periodic basis and have the same start and end dates.

[3]This payment was originally $18,700 plus a car voucher worth $10,500. The payment can be taken as either a lump sum or to purchase an additional monthly pension benefit. Monthly payments, if chosen, are subject to the terms of the Pension Plan covering lifetime payments and any applicable letters appended to the Pension Agreement and are equal to the actuarial equivalent of a lump sum payment.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

plants. As to all but two of these IPR offerings in 2001, DCC and the Union agreed to extend retroactively the special IPR benefit to other employees at the respective plants who had retired from January 31, 2001, up to the last date of the offering period.[4] These agreements to extend retroactively the special IPR benefit are widely referred to by DCC, the Union, and the employees as "sweep ins." In 2002, there were an additional 40 IPR offerings at various plants around the country, including IPR offerings at the St. Louis-North and St. Louis-South plants. Each of these IPR offerings also contained an agreement to sweep in retirements which had been effective since January 31 of that calendar year. However, in May 2003, when an IPR offering was made at the New Castle, Indiana machining operation, the offering did not include any additional sweep in effective dates. That is, the special IPR benefit was not extended retroactively to any previous retirees.

When DCC and the Union engaged in collective bargaining negotiations in 2003, they agreed to continue to incorporate the 2001 IPR Letter Agreement into the Pension Agreement, which was being renegotiated at that time. While DCC and the Union incorporated the 2001 IPR Letter Agreement into the 2003 Pension Agreement, they did not agree to the terms of any specific offering. From September 2003 through the end of 2005, DCC and the Union agreed to sixty-six more IPR offerings. Of these sixty-six offerings, only one offering included sweep in eligibility dates.

All 119 Plaintiffs in this case retired from DCC's St. Louis-North and St. Louis-South plants between September 30, 2003 and November 30, 2004. None of the Plaintiffs retired pursuant to either the 2001 or 2002 IPR offerings at the St. Louis-North or St. Louis-South plants, either because they were not eligible to participate or because they declined to retire at those times. At the time of

---

[4]The other two 2001 IPR offerings were offered in November 2001. They also offered the special IPR benefit to other employees who had already retired, but the benefit was extended back only to retirements effective from August 31, 2001 to the last date of the offering.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiffs' respective retirements, there were no open IPR offerings announced for either the St. Louis-North or St. Louis-South plants. In late November and early December 2004, DCC decided to offer a new IPR offering at the two plants. From DCC's perspective, these incentivized retirements would help reduce excess staff in St. Louis and Huntsville, Alabama. DCC first proposed the IPR for the plants on November 30, 2004, and DCC and the Union agreed to such an offering in early December 2004 ("2004 IPR Offering"). The agreed terms of the 2004 IPR Offering included: (1) conditional IPR offers to eligible employees; (2) an incentive in the amount of $70,000; (3) an election period from December 8 to December 31, 2004; (4) effective retirement dates of January 31, 2005, subject to a potential extension of up to twelve months if required by management; and (5) eligibility requirements which included a proviso that, to qualify, an employee must not terminate employment prior to the effective date of the employee's offer letter. There was no provision to sweep in previous retirees. The total cost to DCC for the 2004 IPR Offering at the St. Louis-North and St. Louis-South plants was approximately $45 million.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**III. DISCUSSION**

In their Complaint, Plaintiffs essentially allege that they should have been eligible for the 2004 IPR Offering and contend that the failure to include them constitutes a breach of contract by DCC and evidences the Union's failure to fairly represent them. DCC and the Union have brought Motions for Summary Judgment, contending that there is no genuine dispute as to any material fact and that they are entitled to judgment in their favor as to all three Counts of the Complaint.[5] Plaintiffs oppose the Motions, arguing that there are genuine issues of material fact which preclude summary judgment.

A. Breach of Contract Claim Against DCC

In Count Two, Plaintiffs bring a claim against DCC entitled "Breach of Contract Against DCC," based on Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).[6] Plaintiffs allege that DCC "has breached the terms of the CBA" by failing to comply with an implied

---

[5] Count One is brought against the Union for breach of duty of fair representation, and Count Two is brought against DCC for breach of contract. Count Three is not an independent cause of action, but is instead a request for punitive damages against both Defendants based on the allegations contained in Counts One and Two.

[6]

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

contract term concerning sweep ins.[7]  It is undisputed that Plaintiffs were not eligible for the special $70,000 IPR incentive under the express terms of the 2004 IPR Offering.  Rather, Plaintiffs contend that they should have been eligible for the 2004 IPR Offering because there was a past practice of

---

[7]Plaintiffs' theory or theories of liability as to DCC have continually shifted, appearing to change frequently in an apparent attempt to avoid summary judgment.  Plaintiffs have had numerous opportunities to clearly set forth their theory or theories of liability as to DCC and to present arguments in support of those theories.  In fact, in an effort to more fully understand Plaintiffs' allegations and the arguments presented for this Court's review, the Court heard oral argument on DCC's Motion for Summary Judgment, specifically requesting that Plaintiffs come prepared to explain their theory or theories of liability as to DCC.  After attempting to reconcile the allegations made in Plaintiffs' Complaint with Plaintiffs' Memorandum in Opposition to DCC's Motion for Summary Judgment and the statements made by counsel for Plaintiffs on the record during the hearing on DCC's Motion, the Court has determined that Plaintiffs are proceeding against DCC on a breach of contract theory based on DCC's refusal to sweep in retirees in the 2004 IRP Offering.

   The Court reached this conclusion by considering the following:  It first appeared that Plaintiffs' theory of liability as to DCC was that DCC breached its agreement with Plaintiffs by failing to comply with an implied contract term concerning sweep ins.  However, in Plaintiffs' Opposition to DCC's Motion for Summary Judgment, Plaintiffs emphatically and repeatedly insisted that their theory of liability against DCC is that "DCC failed to bargain in good faith with the unions on the issue of the IPR and the issue of 'sweep ins.'" Pls' Resp. in Opp. at 7.  Further confusion is created by the fact that Count Two's primary paragraph begins with a statement that DCC has breached its contract with Plaintiffs (indicating a breach of contract claim) followed by four subparagraphs, one of which complains that DCC has failed to comply with a contract term (indicating a breach of contract claim), one of which complains that DCC failed to bargain with the Union in good faith concerning the sweep in issue (indicating some type of unfair labor practice claim), and one of which complains that Plaintiffs were treated in a discriminatory manner (but failing to provide any factual allegations as to how Plaintiffs were discriminated against).  During the hearing on DCC's Motion for Summary Judgment, counsel for Plaintiffs stated that they are bringing a single claim for breach of contract against DCC.  Counsel at first appeared to indicate that there was a breach of contract based on DCC's discrimination against Plaintiffs *and* on DCC's failure to comply with an implied contract term concerning sweep ins.  However, by the conclusion of the oral argument, it appeared that counsel for Plaintiffs was asserting that the breach of contract claim against DCC is based only on DCC's failure to sweep in recently retired employees and not on an allegation that DCC discriminated against Plaintiffs.  Finally, counsel did concede that Plaintiffs are not bringing an independent claim against DCC for failure to bargain in good faith.  Curiously, counsel added that this allegation is -- pursuant to some theory not made clear to the Court in Plaintiffs' Complaint, briefing, or oral statements -- part of the breach of contract claim.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

sweeping in recent retirees by making the IPR eligibility dates retroactive. Plaintiffs allege that, by not sweeping them in, DCC breached an agreement with the Union to which they are the beneficiaries.

DCC contends that the IPR, by its terms, is an amendment to the Pension Plan and, as such, is governed by the comprehensive provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Specifically, DCC argues that the IPR is an "employee pension benefit plan." According to DCC, ERISA provides a comprehensive and uniform set of laws and regulations governing employee benefit plans and, where claims relate to such plans, ERISA preempts alternative theories of recovery. As DCC correctly points out, "[i]t is well-established that ERISA's civil enforcement provisions are the exclusive remedies for participants seeking to recover benefits under an ERISA plan." *Johnson v. U.S. Bancorp*, 387 F.3d 939, 942 (8th Cir. 2004). "An employee pension benefit plan is defined by ERISA as

> 'any plan, fund or program [which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both,] to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program –
> (i) provides retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
> [regardless of the method of caluclating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.]'"

*Emmenger v. Bull Moose Tube Co.*, 197 F.3d 929, 932 (8th Cir. 1999) (quoting 29 U.S.C. § 1002(2)(A)). Claims for benefits must be "determined by construing the plan *in toto*," and not by attempting to sever out particular elements, amendments, or documents. *Stearns v. NCR Corp.*, 297 F.3d 706, 710 (8th Cir. 2002); *see also Wilson v. Moog Automotive, Inc.*, 193 F.3d 1004, 1008 (8th Cir. 1999) (plant closing agreement was amendment to pension plan and must be considered in evaluating ERISA claim).

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Here, there is no dispute that the Pension Agreement collectively bargained for by DCC and the Union and which sets forth terms of the existing Pension Plan is an ERISA-governed employee pension benefit plan. The IPR – both the 2001 IPR Letter Agreement and the individual offerings, including the 2004 IPR Offering – is, by its terms, an amendment to this ERISA-governed Pension Agreement.[8] For example, the 2001 IPR Letter Agreement contains an outline of the early retirement incentive, but cross-references other Pension Plan provisions to provide additional detail. *See* DCC's Ex. C. Further, the Pension Agreement refers to the Pension Plan, and the 2001 IPR Letter Agreement states that it amends the Pension Agreement. *See* DCC's Ex. B at 1, 202. Further, the details of individual IPR offerings are agreed between DCC and the Union on a case-by-case basis and are incorporated in other documents. *See* DCC's Ex. F, K, L, M, N. Finally, an employee's eligibility to participate in any IPR offering depends on his or her eligibility for standard or early retirement benefits under the Pension Plan. The Pension Plan, the Pension Agreement, the 2001 IPR Letter Agreement, and the various documents which further specify the individual IPR offerings (including the 2004 IPR Offering) form the "plan" or "program" under ERISA and must be considered as a whole. The IPR is part of the Pension Plan and is therefore governed by ERISA.[9]

Plaintiffs' theory of liability is that DCC breached its contractual obligations when it failed to

---

[8] The Complaint itself alleges that the IPR is part of the Pension Agreement: "Included in the CBA was a pension agreement and supplemental letter agreement that concerned early retirement benefits and an Incentive Program for Retirements ("IPR")." Compl. ¶ 11.

[9] The IPR here is not a stand-alone program, but rather supplements and amends the collectively bargained Pension Agreement. However, as DCC points out, even if the IPR were considered to be a stand-alone program, it would nevertheless be subject to ERISA. The IPR meets each of the factors the Eighth Circuit has set forth for determining whether the plan includes an "ongoing administrative" scheme subject to ERISA governance. *See Peterson v. E.F. Johnson Co.*, 366 F.3d 676, 678 (8th Cir. 2004). Even if it is considered to be a stand-alone program, the IPR is governed by ERISA.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

include Plaintiffs in the 2004 IPR Offering. Essentially, Plaintiffs seek to recover benefits under the IPR because they believe that they should have been included in the 2004 IPR Offering based on the alleged past practice of retroactively sweeping in previous retirees. Plaintiffs' claim for rights under the IPR based on a past practice is based on a theory of an "implied" contract term. *See Brotherhood Ry. Carmen of U.S. and Canada v. Mo. Pacific R.R. Co.*, 944 F.2d 1422, 1429 (8th Cir. 1991) (collective bargaining agreements may include implied as well as express terms; past practices rise to level of an implied agreement when they have ripened into established and recognized custom between the parties). However, ERISA requires that "[e]very employee benefit shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). To be enforceable under ERISA, any promise for benefits "must be reduced to writing and incorporated, in some fashion, into the formal written ERISA plan." *United Paperworkers Int'l Union v. Jefferson Smurfit Corp.*, 961 F.2d 1384, 1386 (8th Cir. 1992). The Eighth Circuit has rejected the contention that an oral or otherwise unwritten agreement can modify the written terms of an ERISA-governed plan. *See id.* (Congress did not intend to except oral collective bargaining agreements from ERISA requirement that all terms of benefit plan be reduced to writing); *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 958 (8th Cir. 1994) (ERISA precludes oral or informal amendments to plan); *Eide v. Grey Fox Technical Svs. Corp.*, 329 F.3d 600, 607 (8th Cir. 2003) ("Oral statements are unenforceable under ERISA when they amend or supersede contradictory terms in an ERISA plan."). Therefore, an ERISA-governed employee benefit plan cannot be amended by an implied contract term. *See United Paperworkers*, 961 F.2d at 1386 (for bargained-for terms to be given effect, they must be reduced to writing and incorporated into the written ERISA plan). Thus, there is no contract between DCC and the Union containing any term providing that Plaintiffs were to be included in the 2004 IPR Offering and there

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

can therefore be no breach of such a contract. Because there is no legally recognized basis for Plaintiffs' claim against DCC, Plaintiffs' breach of contract theory fails as a matter of law, and DCC is entitled to judgment in its favor as to Counts Two and Three of the Complaint.[10]

B.  Breach of Duty of Fair Representation Against the Union

In Count One, Plaintiffs allege that the Union breached its statutory duty of fair representation by engaging in various actions, including failing to require DCC to comply with its past practice concerning sweep-ins; failing to aggressively represent them when DCC took a position on the issue

---

[10] As explained in Note 6, the Court has had some difficulty in understanding Plaintiffs' theory of liability as to DCC. In an attempt to view the Complaint in the light most favorable to Plaintiffs, the Court recognizes that Plaintiffs are possibly attempting to base their breach of contract claim on two other theories. As the Court briefly explains here, these two theories are without merit and do not save Plaintiffs from having summary judgment entered against them.

First, Plaintiffs might be attempting to base their breach of contract claim on DCC's failure to treat them in a non-discriminatory manner. Compl. ¶ 21(a). The Court notes that the Complaint itself does not appear to contain factual allegations as to how Plaintiffs were treated in a discriminatory manner in violation of the CBA, and Plaintiffs did not raise any argument as to this theory in their Opposition to DCC's Motion for Summary Judgment. Thus, Plaintiffs have waived this argument. To the extent that Plaintiffs' argument has not been waived, it is without merit. Plaintiffs are retirees. Plaintiffs have cited no case, and this Court has found none, which might support a contention that retirees are similarly situated to employees or that they must be treated the same as employees.

Second, Plaintiffs might be attempting to base their breach of contract claim on DCC's decision to "t[ake] a position on the issue of 'sweep ins' that disfavored Plaintiffs" and DCC's "fail[ure] to bargain with [the Union] in good faith on the issue of 'sweep ins.'" Compl. ¶ 21(c)-(d). Plaintiffs have acknowledged that they could have brought a claim before the National Labor Relations Board in a timely manner, but that they chose not to do so. Plaintiffs have failed to demonstrate how this allegation can form the basis of the breach of contract claim made in the Complaint.

Finally, the Court notes that barely half of the 145 IPR offerings made by DCC since 2001 have included sweep in eligibility dates and the "practice" of sweep ins goes back only to 2001. Even if Plaintiffs' claim against DCC were not otherwise barred, this undisputed fact severely undermines Plaintiffs' claim that there was an established practice over a reasonable period of time by DCC and the Union to provide for sweep ins. *See Bhd. of Maint. of Way Employees v. Burlington N. R.R. Co.*, 802 F.2d 1016 (8th Cir. 1986) (when *long-standing* practice ripens into an *established and recognized custom* between the parties, it is protected against sudden and *unilateral* change) (emphasis added).

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of sweep-ins that disfavored Plaintiffs, failing to require DCC to bargain in good faith on the issue of sweep-ins; and, failing to adequately communicate with them or explain the 2004 IRP Offering to them prior to the ratification vote. Compl. ¶ 20. In moving for summary judgment, the Union argues: (1) it had no duty to represent Plaintiffs because a union has no legal duty to represent retirees; (2) Plaintiffs' claim is barred because they failed to exhaust the Unions' internal appeals process before bringing suit; and (3) Plaintiffs are unable to demonstrate that DCC breached any contract with the Union, a necessary prerequisite to prevailing against the Union in this action.

As the Union correctly argues, because Plaintiffs are unable to demonstrate that DCC has breached any contract with the Union, Plaintiffs' claim for breach of duty of fair representation against the Union fails as a matter of law. A suit such as the one Plaintiffs bring here is known as a "hybrid § 301/fair representation action"; such actions combine "a straightforward § 301 breach-of-contract suit against an employer with a suit against the union for breach of the union's duty of fair representation. *Livingstone v. Schnuck Mkt., Inc.*, 950 F.2d 579, 581 (8th Cir. 1991). "[A] hybrid claim is one in which the employee has a cause of action against both the union and the employer [and] the two actions are 'inextricably linked.'" *Id.* at 582. Plaintiffs do not dispute that their Complaint brings a hybrid § 301/duty of fair representation claim for the alleged wrongful actions of DCC and the Union concerning the 2004 IRP Offering. Thus, Plaintiffs must prove both a breach of contract by DCC and a breach of the duty of fair representation by the Union. *See Blount v. UAW Local 25*, 984 F.2d 244, 248 (8th Cir. 1993) (union members brought action against employer and union concerning employer's refusal to allow transfers to new plant; plaintiffs must show employer breached collective bargaining agreement and that union breached its duty of fair representation by failing to prosecute the resulting grievance); *Scott v. UAW Union*, 242 F.3d 837, 840 (8th Cir. 2001)

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(to prevail against employer or union, employee must prove both breach of duty of fair representation by union and breach of the collective bargaining agreement by employer; if unable to establish one element, summary judgment in favor of both is appropriate). Because Plaintiffs, as a matter of law, cannot establish a breach of contract by DCC, their claim against the Union also fails. Even if Plaintiffs were able to establish that they were owed a duty of fair representation by the Union[11] and that they had exhausted their internal union remedies before bringing suit (or that they were excused from doing so),[12] their breach of duty of fair representation claim nonetheless fails. Therefore, the Union is entitled to judgment in its favor as to Counts One and Three.

## IV. CONCLUSION

Plaintiffs have failed to demonstrate that there is any disputed issue of fact which might prevent this Court from entering judgment in favor of DCC and the Union as a matter of law. Plaintiffs' claims against DCC and the Union fail because Plaintiffs cannot establish that DCC breached any contract with the Union. Therefore, the Motions for Summary Judgment filed by DCC and the Union will be granted.[13]

---

[11]Because retirees are not members of a bargaining unit, a union is under no statutory duty to represent them in negotiations with an employer. *See Allied Chem. and Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 182 n.20 (1971) (law does not require union affirmatively to represent nonbargaining union members or to take in to account their interests in making decisions on behalf of those it represents); *Anderson v. Alpha Portland Indust., Inc.*, 727 F.2d 177, 181 (8th Cir. 1984) (union's duty runs to the employees of the bargaining unit and not to persons who are not employees in the bargaining unit; does not run to retirees).

[12]Exhaustion of internal union remedies is generally required before bringing suit, unless it can be shown that exhaustion would be futile. *See Seniority Research Group v. Chrysler Motor Corp.*, 976 F.2d 1185, 1189 (8th Cir. 1992).

[13]As DCC correctly points out, DCC and the Union are free at any time to negotiate as to new wages, hours, terms, and conditions of employment, even if that changes some prior practice. In this case, it appears that DCC and the Union negotiated for terms of an IPR offering that met

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Defendant DaimlerChrysler Corporation's Motion for Summary Judgement [doc. #17] and Defendants International Union, United Automobile Aerospace & Agricultural Implement Workers of America – UAW; Local 110 International Union, United Automobile Aerospace & Agricultural Implement Workers of America – UAW; and Local 136 International Union, United Automobile Aerospace & Agricultural Implement Workers of America – UAW's Motion for Summary Judgment [doc. #21] are **GRANTED**.

An appropriate Order of Judgment shall accompany this Order.

Dated this 25th day of July, 2006.

                                                                  E. RICHARD WEBBER
                                                                   UNITED STATES DISTRICT JUDGE

---

their needs as of December 2004. It is understandable that DCC would not agree to sweep in those persons already retired. It is not difficult to see that DCC would have little incentive to include already retired persons in a retirement incentive offering, especially in the context of today's international marketplace where the cost of providing employment and retirement benefits (*e.g.*, pension benefits, medical insurance, and so on) continue to rise.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com